UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| SEHAJPREET SINGH (A-201-684-248),<br><br>Petitioner,<br><br>v.<br><br>ORESTES CRUZ, Field Office Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement,<br><br>Respondent. | No. 1:26-cv-0141 WBS CSK P<br><br>FINDINGS AND RECOMMENDATIONS |
| --- | --- |

Petitioner Sehajpreet Singh (A-201-684-248), an asylum seeker from India, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Petitioner entered the United States on March 27, 2019, was initially detained by immigration officials and released pursuant to a Family Reunification Application on or about April 4, 2019.  On August 28, 2025, petitioner was re-detained.  This habeas action concerns petitioner's re-detention.  For the following reasons, this Court recommends that the petition be granted, and petitioner be released immediately.

///

///

///

///

///

1

## I.    FACTUAL BACKGROUND[1]

Petitioner is a native and citizen of India who entered the United States on March 27, 2019 without inspection at Calexico, California, and was immediately apprehended by U.S. Customs and Border Protection.  (ECF No. 1 at 3.)  At the time of his initial detention, petitioner was 15 years old.  On March 28, 2019, the U.S. Immigration and Customs Enforcement ("ICE") issued a Notice of Custody Determination (DHS Form I-286) for petitioner stating that pursuant to "section 236 of the Immigration and Nationality Act ['INA', 8 U.S.C. § 1226] and part 236 of title 8, Code of Federal Regulations," petitioner would be detained "pending a final administrative determination in [his] case."  (ECF No. 1-1 at 4.)  Petitioner requested an immigration review of this custody determination.  (Id.)  On March 28, 2019, DHS issued petitioner a Notice to Appear in INA Section 240 (8 U.S.C. § 1229a) removal proceedings, which are standard removal proceedings.[2]  (ECF No. 1-1 at 20.)

On April 4, 2019, petitioner was released from ICE custody under 8 U.S.C. § 1226(a) pursuant to a Family Reunification Application.  (ECF No. 1 at 4; ECF No. 1-1 at 71.)[3]  On June 12, 2019, DHS issued another Notice to Appear, for petitioner to appear on July 25, 2019.  (ECF No. 1-1 at 18.)

Thereafter, petitioner filed an affirmative asylum application.  (Id. at 4; ECF No. 1-1 at 34-35, 37-49.)  Petitioner applied for temporary work authorization and his application was approved.  (Id.; ECF No. 1-1 at 51.)

On May 20, 2024, an immigration judge granted administrative closure of petitioner's removal proceedings.  (ECF No. 1 at 5.)  On June 23, 2025, DHS moved to re-calendar

[1] Petitioner filed a verified habeas petition, attaching various documents from his immigration file, which respondent does not dispute.  (ECF No. 1 at 8.)  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).  Respondents do not contest petitioner's factual allegations.  (See ECF No. 8.)

[2] Removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

[3] Petitioner states that the Family Reunification Application is appended as Exhibit C, but Exhibit C is a Federal Bureau of Investigation Final Disposition Report, DHS Booking Record, DHS Orders to Detain petitioner, and other FBI documents.  (See ECF No. 1-1 at 5-16.)

petitioner's removal proceedings.  (Id.)  On July 7, 2025, the immigration judge denied DHS's motion to re-calendar petitioner's removal proceedings.  (Id.)

On August 27, 2025, ICE issued an arrest warrant for petitioner under INA § 236 (8 U.S.C. § 1226), claiming there was probable cause to believe petitioner is removable based on petitioner's ongoing removal proceedings.[4]  (ECF No. 1 at 5; ECF No. 1-1 at 68.)  On August 28, 2025, petitioner was re-detained by ICE.  (ECF No. 1 at 6.)  ICE informed petitioner he was detained without bond pursuant to Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) (hereafter "Hurtado").  (Id.)

On September 15, 2025, DHS filed a second motion to re-calendar petitioner's removal proceedings, and the immigration judge granted the motion.  (Id.)

Respondents do not contest petitioner's factual allegations.  (See ECF No. 8.)

## II.    PROCEDURAL BACKGROUND

On January 9, 2026, petitioner filed his verified petition for writ of habeas corpus and motion for a temporary restraining order.  (ECF Nos. 1, 2.)  On January 9, 2026, the district judge denied petitioner's motion for a temporary restraining order where petitioner was detained on August 28, 2025, but did not explain why he did not seek injunctive relief sooner.  (ECF No. 4.)  The matter was referred to the assigned magistrate judge, and this Court set a schedule for merits briefing.  (ECF Nos. 4, 6.)  On January 19, 2026, respondent timely filed a motion to dismiss the petition.  (ECF No. 8.)  On January 26, 2026, petitioner timely filed an opposition to the motion to dismiss.  (ECF No. 9.)  Respondent did not file a reply.  On May 14, 2026, petitioner filed a motion for ruling on the petition.  (ECF No. 14.) Briefing is now complete on the merits.

## III.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004)

---

[4]   The Court notes that this appears to be an invalid basis for the arrest warrant where petitioner's removal proceedings were administratively closed at the time that this arrest warrant issued in August 2025 after an immigration judge administratively closed petitioner's removal proceedings in May 2024 and in July 2025 denied the government's motion to recalendar the proceedings. (ECF No. 1 at 5.)  Petitioner's removal proceedings were not recalendared until September 2025.

(citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV.     DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  The petition raises three claims for relief:  (1) detention under the wrong statutory provision (statutory claim); (2) due process violation from the retroactive application of Hurtado; and (3)  due process violation based on detention without a bond hearing.[5]  (ECF No. 1 at 6-7.)  Respondents do not argue that petitioner is a flight risk or a danger to the community and instead argue that as an "applicant for admission," petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2) and he is ineligible for a bond hearing.  (ECF No. 8 at 2.)  Respondents also cite In re Matter of Yajure Hurtado, 29 I & N Dec. 216 (BIA 2025), and conclusorily note without any argument that petitioner failed to exhaust administrative remedies.  (ECF No. 8 at 2-3.)

### A.     Denial of Temporary Restraining Order

Generally, "decisions at the preliminary injunction phase do not constitute law of the case" because "a preliminary injunction decision is just that: preliminary."  Ctr. for Biological Diversity v. Salazar, 706 F.3d 1085, 1090 (9th Cir. 2013) (quoting Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Dep't of Agr., 499 F.3d 1108, 1114 (9th Cir.

---

[5]  The Court notes that

4

2007)).  "As most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  Arizona v. California, 460 U.S. 605, 618 (1983).  "Law of the case directs a court's discretion, it does not limit the tribunal's power."  Id.

Here, the district court denied petitioner's motion for a temporary restraining order due to petitioner's delay in seeking injunctive relief where petitioner was detained on August 28, 2025, but did not seek injunctive relief until over four months later on January 9, 2026 and provided no explanation for his delay.  1/9/2026 Order at 1-3 (ECF No. 4).  The district court found that petitioner therefore "failed to demonstrate the existence of irreparable harm."  Id. at 3.  The district court did not address the underlying claims.  Therefore, law of the case does not apply.

**B.      Statutory Claim (Claim One)**

This Court must first decide whether petitioner, who has no criminal record and has lived in the United States since he was released in April 2019 when he was 15 years old, is subject to discretionary release as first ordered by immigration officials under § 1226(a) as petitioner contends, or whether petitioner is now subject to mandatory detention under § 1225(b)(2)(A), as respondents argue.  8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing.  8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under § 1226(a), the government makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."  Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)).  Section 1226(a) provides "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  Id. at 1202.  Therefore, "[i]f the noncitizen is detained under section 1226(a), she is entitled to a bond hearing."  Labrador-Prato v. Noem, 2025 WL 3458802, at *3 (E.D. Cal. Dec. 2, 2025) (citing Jennings v. Rodriguez, 583 U.S. 281,

5

306 (2018)).  Respondents contend § 1225(b)(2)(A) applies because petitioner is an "applicant for admission" and therefore subject to mandatory detention.  (ECF No. 8 at 2.)

The Court concludes that § 1226(a) applies to petitioner.  First, immigration authorities released petitioner pursuant to 8 U.S.C. § 1226 on April 4, 2019.  (ECF No. 1 at 4; ECF No. 1-1 at 71.)  In addition, immigration authorities expressly noted that it was evaluating custody pursuant to 8 U.S.C. § 1226.  (ECF No. 1-1 at 4.)  Respondents do not dispute these facts.  (See ECF No. 8.)

Second, this Court agrees with and joins the majority of courts nationwide, including the Eastern District of California and the majority of circuit courts that have addressed the issue, in rejecting respondent's new interpretation[6] of Sections 1225 and 1226.  See, e.g., Barbosa da Cunha v. Freden, No. 25-3141, 2026 WL 1146044 (2d Cir. Apr. 28, 2026) ("Today, although we part ways with two other circuits that have addressed this question, we join the overwhelming majority of federal judges across the Nation to consider it and conclude that the government's novel interpretation of the immigration statutes defies their plain text."); Lopez-Campos v. Raycraft, et al., 2026 WL 1283891, at *1 (6th Cir. May 11, 2026); Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, No. 25-14065, 2026 WL 1243395 (11th Cir. May 6, 2026); Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025); Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the [Immigration and Nationality Act], canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting cases rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals']

---

[6] Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.  See Rodriguez Diaz, 53 F.4th at 1196.

construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).  This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.

This Court recognizes that the issues presented in this habeas petition and thousands of other similar petitions in this district and across the country are complex, and have resulted in a circuit split.  See, e.g., Avila v. Bondi, No. 25-3741, 2026 WL 819258 (8th Cir. Mar. 25, 2026); Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026); Alonzo v. Noem, No. 1:25-cv-01519 WBS SCR, 2025 WL 3208284, at *4 (E.D. Cal. Nov. 17, 2025); Valencia v. Chestnut, No. 1:25-cv-01550 WBS JDP, 2025 WL 3205133, at *3 (E.D. Cal. Nov. 17, 2025); Xavier Oliveria v. Albarran, et al., No. 1:25-cv-01760 WBS AC, 2025 WL 3525923 (E.D. Cal. Dec. 9, 2025); Mo v. Chestnut, No. 1:25-cv-01789 WBS CSK, 2025 WL 3539063 (E.D. Cal. Dec. 10, 2025).  At this time, there is no binding authority on district courts in the Ninth Circuit where neither the Ninth

Circuit nor the Supreme Court have decided the issues.

This Court does not find Buenrostro-Mendez or Avila to be persuasive, and instead finds the analysis in Castañon-Nava, 161 F.4th at 1060-62, and Barbosa da Cunha, 2026 WL 1146044, to be more persuasive.  See also Lopez-Campos, 2026 WL 1283891, at *1; Hernandez Alvarez, 2026 WL 1243395; Gurvinder Singh v. Chestnut, 2026 WL 413839 (E.D. Cal. Feb. 14, 2026); Singh v. Baltazar, 2026 WL 352870, at *3-6 (D. Colo. Feb. 9, 2026) (rejecting the Buenrostro majority in its interpretation of § 1225 as nonbinding and highlighting the Seventh Circuit Court of Appeals' disagreement with the Buenrostro majority) (citing Castanon-Nava, 161 F.4th at 1052); Tomas Nicolas v. Warden, 2026 WL 364399, at *3 n.3 (S.D. Ind. Feb. 10, 2026) (disagreeing with Buenrostro majority and declining to follow); Chachipanta Cando v. Bondi, 2026 WL 357551, at *5 n.6 (D. Neb. Feb. 9, 2026) (same); Aroca v. Mason, 2026 WL 357872, at *15 n.40 (S.D. W.Va. Feb. 9, 2026) (same).  In any event, neither Buenrostro-Mendez nor Avila are binding on this Court.

Following the majority of courts, this Court also rejects the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) and their contention that petitioner is an "applicant for admission" subject to § 1225(b)(2).  This Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner was expressly released pursuant to § 1226 in April 2019, he has resided in this country for over 6 years since his release, and petitioner's August 2025 arrest and re-detention were not upon his arrival to the United States.  "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention."  Jennings, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)).  As such, petitioner should have been provided a bond hearing before his re-detention and is entitled to relief on his statutory claim.

### C.    Due Process Claim (Claim Three)

Petitioner also argues that he has a liberty interest in freedom from imprisonment pursuant to the Fifth Amendment, and not being incarcerated after prior release without an individualized bond hearing.  (ECF No. 1 at 6-7.)  Respondents fail to respond to petitioner's due process claim.  (See ECF No. 8.)  Respondents therefore fail to demonstrate the government has satisfied the

8

requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]"  Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas, 533 U.S. at 693.  "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary."  Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps:  the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint.  Young v. Harper, 520 U.S. 143, 147-49 (1997).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey."  Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

Here, petitioner's initial detention and subsequent release in April 2019 are similar

because it allowed petitioner to live in the United States, subject to immigration supervision, but free of custody for 6 years.  Such time allowed petitioner to form "enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  Petitioner was 15 years old when he was released by immigration authorities and subsequently obtained work authorization. This Court finds that petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

Petitioner's release pursuant to § 1226 was premised upon a finding that, at the time of petitioner's release, he was not dangerous nor a flight risk.  See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025).  In light of all of the foregoing, the Court finds that petitioner's prior release created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community.  See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4-5; Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also

10

Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").  For over 6 years, petitioner was free from custody before his re-detention.  Petitioner also obtained work authorization.  The duration of his conditional release elevates and underscores his interest in liberty.  See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor.  "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."  See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d

11

1163, 1172 (W.D. Wash. 2023).  Respondents do not contend that petitioner is or was a flight risk or a danger to the community.  (See generally ECF No. 8.)  In addition, respondents do not contend that petitioner has a criminal record.  (Id.)  Here, petitioner has been detained since August 2025, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community.  No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low."  Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025).  Detention hearings in immigration courts are routine, and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094.  In addition, here, the government's interest is even lower because petitioner was previously released after immigration officials determined he was not a flight risk or danger to the community, he lived in the country for over 6 years on release, and he has no criminal record.  See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was re-detained.  "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked.  Morrissey, 408 U.S. at 480-86.  "Numerous district courts have held that these principles extend to the context of immigration detention."  F.M.V., 2025 WL 3083934 at *6 (collecting cases).  Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process."  Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036.  Accordingly, the Court finds that petitioner is also entitled to relief on his due

12

process claim (claim three).

This Court expressly notes that it is not addressing the length of petitioner's detention and whether such detention is prolonged or indefinite where petitioner does not challenge the length of his detention in the instant petition. See Zadvydas, 533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem.") (detention of noncitizen after final order of removal pursuant to 8 U.S.C. § 1231(a)(6)); Black v. Decker, 103 F.4th 133 (2d Cir. 2024) (indefinite detention of noncitizen violates due process) (detention of noncitizen pursuant to 8 U.S.C. § 1226(c)). Therefore, if petitioner remains detained, petitioner is not barred from filing a separate habeas petition challenging his detention as prolonged or indefinite where such a claim was not raised in the instant petition or ripe at the time the instant petition was filed.

**D.    Other Claim and Arguments**

In light of the Court's recommendation that petitioner's requested relief be granted on claims one and three, petitioner's remaining habeas corpus claim (claim two) need not be resolved.

In addition, though Respondents state in passing in a single sentence that petitioner failed to exhaust administrative remedies, they present no legal authority, facts, or explanation for this argument. (See ECF No. 8 at 3.) Simply stating "Petitioner has failed to exhaust administrative remedies," is insufficient to raise this argument. (See id.) This unsupported argument therefore fails.

**V.    CONCLUSION**

In summary, the Court recommends that the petition for writ of habeas corpus be granted on claims one and three.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.  Respondents' motion to dismiss (ECF No. 8) be DENIED.

3.  Respondents be ordered to IMMEDIATELY release petitioner Sehajpreet Singh (A-201-684-248). If respondents have custody of petitioner's documents (e.g.,

13

identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release.  Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her physical custody is legally justified.  Petitioner shall be allowed to have his counsel present at any such hearing.  **This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case** (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).

4.  The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 20, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

csk/sing.0141.26.frs.merits

14